IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Charles GLYNN, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant,

v.

Charles GLYNN, Respondent.

Supreme Court

*No. 99–2223–D. Filed October 26, 2000.*

## 2000 WI 117

(Also reported in 618 N.W.2d 740.)

¶ 1. PER CURIAM. We review the recommendation of the referee that the license of Charles Glynn to practice law in Wisconsin be suspended for nine months as discipline for professional misconduct and that the suspension be made consecutive to the one-year license suspension previously imposed by the court for other professional misconduct. The misconduct established in the instant proceeding consisted of failing to act with reasonable diligence and promptness in representing clients, failing to explain matters to the extent reasonably necessary to permit two of those clients to make informed decisions regarding their representation, and failing to cooperate with the Board of Attorneys Professional Responsibility (Board) in its investigation into his conduct.

¶ 2. We determine that the professional misconduct established in this proceeding warrants the suspension of Attorney Glynn's license to practice law for nine months and that it is appropriate that the suspension be consecutive to the previous license suspension, as Attorney Glynn has not been reinstated to the practice of law following the completion of that suspension on June 14, 2000. The misconduct considered in the instant proceeding is of the same kind as some of the misconduct for which Attorney Glynn already has been disciplined, and if it had been considered in the earlier disciplinary proceeding, we would have imposed discipline in that proceeding similar to that resulting from our imposition of a consecutive nine-month license suspension in this proceeding.

¶ 3. Attorney Glynn was admitted to practice law in Wisconsin in 1991 and, prior to his license suspension that commenced June 14, 1999, practiced in Milwaukee. That suspension, which continues in effect for the reason that Attorney Glynn has not sought reinstatement of his license, was imposed for misconduct that included paying himself excessive and unauthorized fees in two guardianship matters and attempting to justify those payments by false itemized statements and by documents falsely indicating that he was reimbursing the estates for disbursements he had made to himself without court approval. *Disciplinary Proceedings Against Glynn*, 225 Wis. 2d 202, 591 N.W.2d 606 (1999). In the instant proceeding, Attorney Glynn stipulated to and the referee, Attorney Rose Marie Baron, made findings of fact concerning the following professional misconduct.

¶ 4. In August 1994, Attorney Glynn was appointed by the State Public Defender to represent a client in post-conviction proceedings following the client's conviction and sentence to life in prison. Attorney Glynn and the client agreed to appeal the conviction and sentence, but even though he had received the complete trial transcripts by February 1995, Attorney Glynn did not respond to many of the client's communications concerning the status of the appeal through 1997. He also did not respond timely to two letters from the State Public Defender encouraging him to contact the client, who had complained about Attorney Glynn's representation and lack of communication.

¶ 5. Attorney Glynn did not contact the client until late October 1997. Believing Attorney Glynn would continue to pursue the appeal, as the two had discussed, and hearing nothing from him after that discussion, the client again asked the State Public

Defender to appoint a new attorney and filed a grievance with the Board. Although he met with the client thereafter, Attorney Glynn took no further steps on the client's behalf, and new counsel was appointed for the client. Throughout Attorney Glynn's representation, no notice of appeal was filed, and the client's right to a direct appeal thereby was jeopardized. During the Board's investigation of the matter, Attorney Glynn did not provide a written response to the client's grievance or produce his file, as the Board twice had requested.

¶ 6. In a second matter, a client retained Attorney Glynn in March 1997 to resolve a construction lien dispute. In response to the client's request, Attorney Glynn sent him a copy of a letter he purportedly had sent to opposing counsel in the matter, which letter indicated a copy having been sent to the client but which the client had not received earlier. In fact, however, opposing counsel had received no letter from Attorney Glynn.

¶ 7. When the client was served with a summons and complaint in September 1997, Attorney Glynn told him he had been in touch with opposing counsel and that he should have received the pleading. Soon thereafter, Attorney Glynn told the client he had sent opposing counsel copies of documents concerning the lien, but opposing counsel never received those documents.

¶ 8. A default judgment in the action was entered in December 1997, but Attorney Glynn did not inform his client of it when the client contacted him the following month. Indeed, Attorney Glynn then reassured the client about the progress of the matter and during one conversation said he was commencing an action against the subcontractor. Months later, the client was able to reach Attorney Glynn, after having left numer-

ous telephone messages but having received no response, and told him he would obtain other counsel if Attorney Glynn did not handle the matter properly. Attorney Glynn again reassured the client, as he did several months later when the client finally reached him after unsuccessfully attempting to do so for three months.

¶ 9. When the client obtained other counsel in August 1998, that attorney asked Attorney Glynn to send him all of the material in the client's file as soon as possible. That attorney subsequently learned of the default judgment against the client and that Attorney Glynn had not been in contact with opposing counsel in the lien matter as he had represented to the client. Other than one telephone call shortly before receiving the April 30, 1997, letter, which he did not receive until December 17 of that year, two days after the default judgment had been entered, opposing counsel had had no contact with Attorney Glynn. During the Board's investigation of the client's grievance in this matter, Attorney Glynn delivered a copy of the client's file but did not respond to subsequent requests from the Board for information in the matter.

¶ 10. A third matter concerned Attorney Glynn's representation of a client in several criminal matters pending in different counties. Attorney Glynn appeared at a scheduled plea hearing and sentencing in one of those matters on January 15, 1999, but his client was not present, which resulted in a warrant being issued for the client's arrest. After the client was arrested, he appeared in circuit court on three new criminal cases in which he was represented by a public defender. Because it was known that Attorney Glynn was representing the client in other matters pending in that court, the court attempted to contact Attorney

Glynn to ascertain whether he was still representing the client. Attorney Glynn did not return any of the court's calls and did not respond to a letter from the judge.

¶ 11.   The court then sent Attorney Glynn a notice scheduling the client's plea and sentencing, and when he failed to appear on that date, the court issued an order requiring Attorney Glynn to show cause why he should not be found in contempt. On the return date of that order, Attorney Glynn said that while he was in the courthouse on another matter prior to that hearing, he had attempted to see the judge to explain his failure to appear and his not responding to the court's calls and letter but did not get an opportunity to talk with the judge. Unsure of that explanation, the judge sent a copy of the transcript of that hearing to the Board, and the Board subsequently ascertained that Attorney Glynn had not made an appearance in another case in the courthouse on the day he said he had attempted to see the judge. During the Board's investigation, Attorney Glynn never provided the Board with a copy of his client's files, despite several requests to do so, and did not respond timely to two requests from the Board for information about his conduct in the client's matter.

¶ 12.   The parties stipulated and the referee concluded that Attorney Glynn's action and inaction in the foregoing three matters constituted the following professional misconduct.

(a)   His failure to pursue post-conviction relief diligently and timely on behalf of the client in the first matter violated SCR 20:1.3.[1]

---

[1] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

865

(b) His failure to respond to communications from that client and to requests from the State Public Defender and his failure to provide any meaningful representation after meeting with the client in the first matter violated SCR 20:1.4(a)[2] — a failure to keep a client reasonably informed as to the status of a matter and promptly comply with reasonable requests for information.

(c) His failure to protect the client adequately against entry of a default judgment in the contractor lien matter, knowing a lawsuit was threatened, and his failure to take necessary steps to resolve or vacate that judgment violated SCR 20:1.3.

(d) His failure to provide the client with a copy of a letter he had sent to opposing counsel, to inform the client of the status of his dealings with that counsel regarding resolution of the lien issue, and to communicate to his client about the entry of a default judgment violated SCR 20:1.4(a).

(e) His failure to appear at or make any effort to reschedule a plea and sentencing hearing violated SCR 20:1.3.

(f) His failure to respond to letters from the Board and provide documents requested in its investigation timely or at all in each of

---

[2] SCR 20:1.4(a) provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

the three matters violated SCR 21.03(4) and 22.07(2) and (3).[3]

¶ 13. As discipline for that professional misconduct, the referee recommended, as the Board and Attorney Glynn had stipulated, that Attorney Glynn's license to practice law be suspended for nine months, consecutive to the one-year suspension imposed earlier, which was to expire June 14, 2000. The referee also recommended, as the parties had stipulated, that Attorney Glynn be required to pay the costs of the instant proceeding.

---

[3] Former SCR 21.03(4), applicable to this proceeding, provided:

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

Former SCR 22.07(2) and (3), applicable to this proceeding, provided:

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation. Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

¶ 14. IT IS ORDERED that the license of Charles Glynn to practice law in Wisconsin is suspended for nine months, commencing June 14, 2000.

¶ 15. IT IS FURTHER ORDERED that within 60 days of the date of this order Charles Glynn pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Charles Glynn to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 16. IT IS FURTHER ORDERED that Charles Glynn comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 17. WILLIAM A. BABLITCH and DAVID T. PROSSER, JR., JJ., did not participate.