IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Charles GLYNN, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
n/k/a Office of Lawyer Regulation,
Complainant-Respondent-Cross-Appellant,

v.

Charles GLYNN,
Respondent-Appellant-Cross-Respondent.

IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Charles GLYNN, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
n/k/a Office of Lawyer Regulation, Complainant,

v.

Charles GLYNN, Respondent.

Supreme Court

*Nos. 1997AP3058–D, 1999AP2223–D.
—Decided February 15, 2011.*

2011 WI 9

(Also reported in 795 N.W.2d 772.)

¶ 1. PER CURIAM. We review a referee's report recommending that Attorney Charles Glynn's license to practice law in Wisconsin be reinstated subject to certain conditions. The Office of Lawyer Regulation (OLR) does not oppose that recommendation. No appeal was filed so we review this matter pursuant to SCR 22.17(2).[1]

¶ 2. After careful consideration, we adopt the referee's findings of fact and conclusions of law and

---

[1] SCR 22.17(2) states:

conclude that Attorney Glynn's license to practice law should be reinstated. We need not impose any conditions upon Attorney Glynn's reinstatement because Attorney Glynn has satisfied the conditions recommended by the referee. We direct Attorney Glynn to pay the costs of the reinstatement proceeding, which total $3,753.16 as of November 2, 2010.[2]

¶ 3.  Attorney Glynn was admitted to practice law in Wisconsin in 1991. He practiced in Milwaukee. In April 1999 Attorney Glynn's license to practice law was suspended for one year, effective June 14, 1999, based upon misconduct committed while he served as guardian for two estates and conservator for a third estate. Attorney Glynn collected unreasonable fees without the approval of the court, failed to file necessary reports with the court, failed to act competently and timely, and used false statements and documents to justify his excessive fee and to mislead the person investigating his misconduct. *See In re Disciplinary Proceedings Against Glynn,* 225 Wis. 2d 202, 591 N.W.2d 606 (1999). The referee in that matter noted that Attorney Glynn had "reaped substantial financial benefits from the modest Estates of persons effectively unable to protect themselves, while performing no services of commensurate value . . . ." *Id.* at 211. The court found the large sums taken by Attorney Glynn from vulnerable victims

---

If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[2] By letter dated December 21, 2010, Attorney Glynn advised the court he was waiving any objection to the costs of this reinstatement proceeding.

and the purposeful pattern of deception he employed required his suspension in order to protect the legal system and the public from similar misconduct. Attorney Glynn was ordered to pay restitution to his clients and to a bonding company, as well as to pay the costs of the disciplinary proceeding. *Id.* at 213–14.

¶ 4.  Attorney Glynn was also convicted of one count of Theft from a Business Setting, Greater than $1,000 but less than $2,500, a class E felony, related to his handling of two of the estates for which he served as guardian. He was placed on probation for three years. He was released from probation in 2003.

¶ 5.  In 1998 Ohio Casualty, Attorney Glynn's bonding company, obtained a $78,000 judgment against Attorney Glynn for the claims it paid on the two estates for which Attorney Glynn served as guardian. Attorney Glynn had already made restitution to the conservatorship from his own funds.

¶ 6.  In October 2000 Attorney Glynn's Wisconsin law license was suspended again, this time for nine months[3] retroactive to the date of his earlier suspension, June 14, 2000. *In re Disciplinary Proceedings Against Glynn,* 2000 WI 117, 238 Wis. 2d 860, 618 N.W.2d 740. Attorney Glynn's misconduct in this matter consisted of failing to act with reasonable diligence and promptness in representing three clients, failing to explain matters reasonably necessary to permit two of those clients to make informed decisions regarding their representation, and failing to cooperate with the investigation into his misconduct. *Id.*

---

[3] Attorney Glynn never petitioned for reinstatement after the first disciplinary proceeding so he has not practiced law since June 14, 1999.

¶ 7. On July 29, 2008, Attorney Glynn filed a petition seeking reinstatement of his license to practice law in Wisconsin. On July 31, 2008, Attorney Glynn filed an amended petition for reinstatement. The referee conducted an evidentiary hearing on August 16, 2010.

¶ 8. Supreme court rule 22.31(1)[4] provides the standards to be met for reinstatement. Specifically, the petitioner must show by clear, satisfactory, and convincing evidence that he or she has the moral character to

---

[4] SCR 22.31 provides as follows:   Reinstatement hearing.

(1) The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to [(4m)] and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

(2) The reinstatement hearing shall be public.

(3) The referee shall appoint a person to act as court reporter to make a verbatim record of the proceeding as provided in SCR 71.01 to 71.03.

(4) The petitioner and the director or a person designated by the director shall appear at the hearing. The petitioner may be represented by counsel.

(5) The hearing shall be conducted pursuant to the rules of civil procedure. The rules of evidence shall not apply, and the referee may consider any relevant information presented. Interested persons may present information in support of or in opposition to reinstatement.

practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that he or she has complied with SCR 22.26 and the terms of the order of suspension. In addition to these requirements, SCR 22.29(4)(a)-(4m)[5] provides additional requirements that an attorney seeking reinstatement

[5] SCR 22.29(4)(a)-(4m) states the petition for reinstatement shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client

must show. All of these additional requirements are effectively incorporated into SCR 22.31(1).

██

¶ 9.   When we review a referee's report and recommendation, we will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747.

¶ 10.   Here, the referee concluded Attorney Glynn had met his burden of demonstrating that his license to practice law in Wisconsin should be reinstated. Attorney Glynn asserted and the referee found that Attorney Glynn desires to have his license reinstated and that he has not practiced law during the period of suspension. SCRs 22.29(4)(a) and (b). At the evidentiary hearing the referee elicited a full description of Attorney Glynn's business activities during his suspension, as required by SCR 22.29(4)(k).

¶ 11.   After his suspension Attorney Glynn worked at Roundy's warehouse and then sold title insurance. He then worked at the Milwaukee Child Welfare Bureau and also worked part-time at St. Charles Youth and Family Services (St. Charles). In 2003 he began working full-time for St. Charles in a supervisory position and is still employed there. He also works part-time for the Wisconsin Athletic Club. While working at St. Charles he and others at St. Charles, together with judges, district attorneys, and defense attorneys, developed a Focus Program for youth offenders to break their cycle of juvenile criminal activities. This program has been in effect for about seven years. The referee found Attorney Glynn worked 10 to 14 hours a day to make sure the

protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

needs of the young men at St. Charles were met, and he used creative programming to inspire hope in their young lives. In 2007, at the request of Dane County, Attorney Glynn established a Focus Program in Madison. This effort took about two years. He worked with judges, district attorneys, probation officers, and public defenders in Dane County to make the Focus Program a success. Attorney Glynn has supervised programs that have generated millions of dollars in revenue for St. Charles. He has handled tens of thousands of dollars in petty cash funds, has access to all agency vehicles and equipment, and has traveled to training and conferences across the country using a St. Charles credit card.

¶ 12. There is no evidence in this record that Attorney Glynn has engaged in any improper conduct since his suspension. SCR 22.29(4)(e). The referee found that Attorney Glynn demonstrates a proper understanding of and attitude toward the standards that are imposed upon members of the bar. SCR 22.29(4)(f). The referee was satisfied that Attorney Glynn will act in conformity with these standards. Indeed, Attorney Glynn appears to have taken responsibility for his prior misconduct, stating that he is "embarrassed, ashamed, and deeply sorry" for his misconduct. Attorney Glynn was drinking during the time he engaged in the misconduct leading to his suspension. In July 2000 Attorney Glynn acknowledged his alcoholism and joined Alcoholics Anonymous (AA). He has remained sober since that time and regularly attends AA meetings. He celebrated ten years of sobriety on July 10, 2010. Two references noted that Attorney Glynn's recovery is "exceptional." Attorney Glynn also filed several positive character references from attorneys, employers, and personal friends. The referee thus concluded that Attorney Glynn had satisfied the requirements of SCR

22.29(4)(g). The referee found further that Attorney Glynn complied with SCR 22.26 after his suspension. SCR 22.29(4)(h). If reinstated Attorney Glynn intends to practice juvenile and criminal law within a law firm or in an association with other lawyers. SCR 22.29(4)(j).

¶ 13.   The OLR did not oppose Attorney Glynn's reinstatement but expressed concern about certain aspects of his petition. The OLR noted that at the time of the evidentiary hearing Attorney Glynn had not, in fact, complied fully with the terms of the order of suspension because he has not yet paid full restitution. SCR 22.29(4)(c). All of the individual clients from whom Attorney Glynn took money were reimbursed by the bonding company, Ohio Casualty, and Ohio Casualty obtained a judgment for the amount they paid, plus interest. Attorney Glynn had yet to pay full restitution to Ohio Casualty. The referee noted that Attorney Glynn has paid Ohio Casualty approximately $16,500 of the restitution and at the time of the reinstatement hearing he was in the process of negotiating a compromised settlement of the judgment. Attorney Glynn requested that he be granted 90 days to file a satisfaction of judgment in the Ohio Casualty matter and the OLR did not object to this request. While this reinstatement petition was pending Attorney Glynn filed the satisfaction of judgment, fulfilling his restitution obligation.

¶ 14.   Attorney Glynn also did not attend any CLE courses during his suspension. *See* SCR 22.29(4)(d). He requested that as a condition of his receiving his license, he be allowed 90 days to fulfill CLE obligations required of him by the Board of Bar Examiners (BBE). The referee recommended granting Attorney Glynn's request regarding the CLE requirements. By memorandum dated December 15, 2010, the BBE advised the

court that Attorney Glynn had fulfilled the CLE requirements necessary for his reinstatement.

¶ 15. Attorney Glynn has refrained from all alcohol for ten years. He has held positions of significant trust and has managed finances of St. Charles and the Wisconsin Athletic Club. Both employers have indicated their belief in his trustworthiness and have recommended his reinstatement. In short, Attorney Glynn has changed his life during the suspension period.

■

¶ 16. Accordingly, after careful review of the record we agree that Attorney Glynn has established by clear, satisfactory, and convincing evidence that he has satisfied the criteria necessary for reinstatement. We therefore adopt the referee's findings of fact and conclusions of law and we accept the referee's recommendation to reinstate Attorney Glynn's license to practice law in Wisconsin. We need not impose any conditions upon Attorney Glynn's reinstatement because Attorney Glynn has satisfied the conditions recommended by the referee.

¶ 17. IT IS ORDERED that Charles Glynn's license to practice law in Wisconsin is reinstated effective the date of this order.

¶ 18. IT IS FURTHER ORDERED that within 60 days of the date of this order, Charles Glynn shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Charles Glynn to practice law in Wisconsin shall be suspended until further order of the court.

¶ 19. DAVID T. PROSSER, J., did not participate.