# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1767-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Bridget E. Boyle, Attorney at Law: |

Office of Lawyer Regulation,
　　　　　Complainant-Respondent,
　　　v.
Bridget E. Boyle,
　　　　　Respondent-Appellant.

---

DISCIPLINARY PROCEEDINGS AGAINST BOYLE

---

| | |
|---|---|
| OPINION FILED: | December 26, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

　　For the respondent-appellant, there were briefs by *Bridget E. Boyle* and *Boyle, Boyle & Boyle, S.C.*, Milwaukee.


　　For the Office of Lawyer Regulation, there was a brief by *Robert G. Krohn*, Edgerton.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP1767-D

STATE OF WISCONSIN  :  IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Bridget E. Boyle, Attorney at Law:**

**Office of Lawyer Regulation,**

**FILED**

          **Complainant-Respondent,**

     **v.**

**DEC 26, 2013**

**Bridget E. Boyle,**

Diane M. Fremgen
Clerk of Supreme Court

          **Respondent-Appellant.**

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1    PER CURIAM. Attorney Bridget E. Boyle appeals the report of James J. Winiarski, referee, recommending discipline of a four-month license suspension, the imposition of costs, and restitution to a client in the amount of $2,500. The referee found that Attorney Boyle committed nine of the ten charged counts of misconduct that were tried at a hearing before the referee. The ethical violations which the referee determined Attorney Boyle committed included failing to keep a client

reasonably informed about the status of a matter; failing to promptly comply with reasonable requests by the client for information; failing to communicate the basis for her fees and expenses; failing to promptly respond to a client's request for information concerning fees and expenses; failing to timely return a client's file after the client's request; charging an unreasonable fee; failing to hold unearned fees and advanced payments of fees in trust until earned; and failing to return unearned fees to her client upon termination of her representation.

¶2 After our independent review of the record, we approve the referee's findings of fact and conclusions of law and adopt them. We agree that Attorney Boyle should pay restitution in the amount of $2,500 as described below, and we agree that Attorney Boyle should pay the full costs of this disciplinary proceeding.

¶3 We do not, however, accept the referee's recommendation that Attorney Boyle's misconduct be sanctioned by a four-month suspension. The serious nature of Attorney Boyle's misconduct, combined with her substantial disciplinary history, render a four-month suspension an insufficient response. It is imperative that to resume the practice of law in Wisconsin, Attorney Boyle must show this court that she has taken steps to avoid similar misconduct in the future. We therefore impose a

six-month suspension of Attorney Boyle's Wisconsin law license. See SCR 22.28(3).[1]

¶4 Attorney Boyle was licensed to practice law in Wisconsin in 1995 and practices in Milwaukee. In 2008 Attorney Boyle was privately reprimanded for failing to act with reasonable diligence and promptness in representing a client; failing to keep the client reasonably informed about the status of a matter; failing to promptly comply with reasonable requests for information; and failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

¶5 In 2012 Attorney Boyle was suspended for 60 days for failing to act with reasonable diligence and promptness in representing a client; failing to communicate appropriately with a client; failing to promptly respond to a client's request for information concerning fees and expenses; failing to take steps to the extent reasonably practicable to protect a client's interest; failing to cooperate with an OLR investigation into her conduct; willfully failing to provide relevant information, fully answer questions, or furnish documents in the course of an OLR investigation; and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. In re Disciplinary Proceedings Against Boyle, 2012 WI 54, 341 Wis. 2d 92, 813

---

[1] SCR 22.28(3) states, "The license of an attorney that is revoked or suspended for misconduct for six months or more shall be reinstated pursuant to the procedure set forth in SCR 22.29 to 22.33 and only by order of the supreme court."

3

N.W.2d 215. Also in 2012, the Seventh Circuit Court of Appeals disbarred Attorney Boyle from further practice in that court for her abandonment of her client in a criminal case. In re Bridget Boyle-Saxton, 668 F.3d 471 (7th Cir. 2012).

¶6 This disciplinary matter began with 13 counts, three of which the referee dismissed during the disciplinary hearing at the OLR's request. The remaining ten counts concern Attorney Boyle's work for two clients, C.M. and C.P. We take the following facts from the referee's report.

CLIENT C.M.

¶7 Counts Four through Nine arise out of Attorney Boyle's representation of an individual, C.M., who had been convicted of one count of possessing firearms after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(l), and five counts of violating 26 U.S.C. § 5861(d) for possessing firearms not registered in the National Firearms Registration and Transfer Record. The United States District Court for the Eastern District of Wisconsin sentenced C.M. to six concurrent terms of 84 months imprisonment, with two years of supervised release.

¶8 In early 2007 C.M. asked Attorney Boyle, who had not previously represented him, to appeal his conviction. Attorney Boyle offered to represent C.M. for a total of $20,000. C.M. agreed and paid Attorney Boyle that amount of money.

¶9 No written fee agreement existed between Attorney Boyle and C.M. Attorney Boyle did not communicate to C.M. the

4

basis or rate for her fee or the precise legal services covered by the fee.

¶10 C.M. and Attorney Boyle did not reach agreement on what services the $20,000 fee would cover. C.M. believed the fee covered a direct appeal to the United States Court of Appeals for the Seventh Circuit, including a motion for rehearing, a motion for rehearing en banc, a petition for writ of certiorari to the United States Supreme Court, a petition pursuant to 28 U.S.C. § 2255 to vacate the sentence, a motion pursuant to 18 U.S.C. § 3143 for bail pending appeal, and various filings with the department of probation to correct the presentence report. Attorney Boyle maintains she did not promise any particular legal services for the agreed upon fee of $20,000 other than an appeal to the Seventh Circuit and a possible 28 U.S.C. § 2255 petition, and that the precise nature of services she would render for the $20,000 fee was dependent upon her review of the file. However, even after reviewing the file, Attorney Boyle never stated the precise nature of the legal services that she would provide for C.M.

¶11 Although C.M. requested that Attorney Boyle seek bail pending appeal, Attorney Boyle never filed a motion asking for this relief. On numerous occasions, C.M. wrote and called Attorney Boyle concerning his requested motion for bail, but Attorney Boyle did not respond to his inquiries.

¶12 On numerous occasions, C.M. wrote Attorney Boyle to inquire about issues he wanted Attorney Boyle to raise in his Seventh Circuit appeal, and to request that Attorney Boyle

5

schedule a telephone conference with him. Attorney Boyle did not respond to these letters.

¶13 During a two-month period surrounding the oral argument of his case in the Seventh Circuit, C.M. called Attorney Boyle 84 times from prison. Attorney Boyle was consistently unavailable to speak with C.M. and answer his questions concerning the appeal. C.M.'s friend, C.S., also called and e-mailed Attorney Boyle regularly in an attempt to assist C.M. in obtaining the status of his case, but was unable to reach Attorney Boyle.

¶14 In an opinion dated January 22, 2008, the Seventh Circuit affirmed C.M.'s conviction. Attorney Boyle did not advise C.M. of the unsuccessful outcome of his appeal, nor did she respond to his telephone calls during the months following the Seventh Circuit's decision. C.M. finally learned of the Seventh Circuit's decision in July 2008 from an individual within the prison where he resided.

¶15 On December 30, 2008, Attorney Boyle filed a motion with the United States District Court for the Eastern District of Wisconsin to vacate C.M.'s sentences pursuant to 28 U.S.C. § 2255. Relief under 28 U.S.C. § 2255 is considered an extraordinary remedy, appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect resulting in a complete miscarriage of justice. Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). Notwithstanding this high burden, Attorney Boyle did not attach

any affidavits to support her position, and her supporting arguments were minimal.

¶16 On January 9, 2009, the district court denied the 28 U.S.C. § 2255 motion, noting the motion lacked legal or evidentiary support. Attorney Boyle did not advise C.M. of the unsuccessful outcome of this motion. Attorney Boyle claims she did not see the decision because the district court sent her the decision via e-mail only; she surmises that she must have accidently deleted the decision from her computer.

¶17 On January 29, 2009, Attorney Boyle sent C.M. a copy of the 28 U.S.C. § 2255 motion, despite the fact that the district court had already denied the motion.

¶18 On February 5, 2009, C.M. wrote Attorney Boyle and asked about the 28 U.S.C. § 2255 motion. He also asked for a copy of his retainer agreement or engagement letter and "a full written accounting of the time you have spent on my matter." Attorney Boyle did not respond to this letter.

¶19 On May 13, 2009, C.M. wrote Attorney Boyle and noted she had not responded to his last several letters.

¶20 On August 8, 2009, C.M. wrote Attorney Boyle to request information on his case. He stated that he had not been able to speak with her despite his numerous requests to do so. He further stated that he had heard from a third party that the district court had denied his 28 U.S.C. § 2255 motion.

¶21 From June 2009 through September 2009, C.M. made many unsuccessful attempts to call Attorney Boyle. C.M.'s friend, C.S., also attempted to reach Attorney Boyle by telephone.

7

Attorney Boyle's staff repeatedly told C.M. and C.S. that the district court had not ruled on the 28 U.S.C. § 2255 motion.

¶22  On September 3, 2009, C.M. wrote Attorney Boyle again and asked about the status of the 28 U.S.C. § 2255 motion.

¶23  On September 30, 2009, C.M. wrote the clerk of court for the Seventh Circuit, asking the Chief Judge of that court to order Attorney Boyle to communicate with him.

¶24  By early 2010 C.M. learned, from a source other than Attorney Boyle, that the district court had denied his 28 U.S.C. § 2255 motion.  C.M. filed a pro se motion with the district court to reopen the time for appealing the denial of the 28 U.S.C. § 2255 motion, claiming that he did not receive timely notice of the denial.  The district court denied C.M.'s motion.

¶25  On February 12, 2010, C.M. wrote Attorney Boyle and requested a copy of his file and a refund of fees.

¶26  On February 24, 2010, C.M. again wrote Attorney Boyle, terminating his relationship with her and requesting a copy of his file, a return of unearned fees, and an accounting of her time.

¶27  By mid-2010 Attorney Boyle had not returned C.M.'s file, returned any unearned fees, or provided an accounting of her time.  After C.M. alerted the OLR of these facts, the OLR wrote to Attorney Boyle and advised her to provide C.M. with a copy of the file.

¶28  In July 2010 the OLR issued a notice to appear to Attorney Boyle for an investigative interview.  Attorney Boyle complied with the notice and appeared and answered questions

posed by the OLR. Attorney Boyle also gave the OLR a complete copy of C.M.'s file, which the OLR copied and forwarded to C.M. Attorney Boyle did not furnish any accounting for her fees or return any portion of the $20,000 paid by C.M.

¶29 The OLR's complaint alleges that, by virtue of her conduct while representing C.M., Attorney Boyle:

- failed to keep her client reasonably informed about the status of his 28 U.S.C. § 2255 motion and his Seventh Circuit appeal, and failed to promptly comply with her client's reasonable requests for information about these matters, in violation of former SCR 20:1.4(a)[2] and SCRs 20:1.4(a)(3) and (4)[3] (Counts Four, Five, and Six);

- failed to communicate the basis for her fee, in violation of former SCR 20:1.5(b)[4] (Count Seven);

---

[2] Former SCR 20:1.4(a) (effective prior to July 1, 2007), provided, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCRs 20:1.4(a)(3) and (4) state that a lawyer shall "(3) keep the client reasonably informed about the status of the matter;" and "(4) promptly comply with reasonable requests by the client for information; . . . ."

[4] Former SCR 20:1.5(b) (effective prior to July 1, 2007) provided as follows: "When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

- failed to promptly respond to a client's request for information concerning fees and expenses, in violation of SCR 20:1.5(b)(3)[5] (Count Eight); and
- failed to return a client's file upon termination of representation, in violation of SCR 20:1.16(d)[6] (Count Nine).

CLIENT C.P.

¶30 Counts Ten through Thirteen arise out of Attorney Boyle's representation of an individual, C.P., who in 2008 was convicted after a jury trial of one count of burglary—armed with a dangerous weapon, and one count of second-degree endangering safety while armed. The circuit court sentenced C.P. to five years of imprisonment and five years of extended supervision on each count, with the sentences to run consecutively to each other and to any other sentence C.P. might be serving.

---

[5] SCR 20:1.5(b)(3) states, "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

[6] SCR 20:1.16(d) states as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

¶31 In August 2010, after his deadline for pursuing a direct appeal had expired, C.P. filed multiple pro se motions with the circuit court seeking postconviction relief. On August 25, 2010, the circuit court issued an order denying C.P.'s postconviction motions.

¶32 C.P.'s longtime companion, B.T., asked Attorney Boyle to file an appeal following the denial of C.P.'s postconviction motions. B.T. mistakenly believed that any such filing was due within 20 days of the circuit court's August 25, 2010 denial order; i.e., by September 14, 2010. B.T. paid Attorney Boyle $2,500 with the understanding that Attorney Boyle would file an appeal by September 14, 2010. Attorney Boyle deposited the $2,500 into the firm's operating account and not the firm's trust account.

¶33 By September 14, 2010, Attorney Boyle had taken minimal action on C.P.'s case. She filed nothing with the court of appeals or any other court. Although Attorney Boyle determined that C.P. and B.T. were mistaken in believing that a September 14, 2010 filing deadline was in effect, she did not inform either C.P. or B.T. that no such deadline applied to C.P.'s case.

¶34 Between September 15, 2010, and September 27, 2010, after learning that Attorney Boyle had filed nothing in the courts, B.T. called Attorney Boyle multiple times and informed her that she wished to terminate the representation and recover the $2,500 advanced fee. Attorney Boyle returned C.P.'s file to

11

B.T.   Attorney Boyle did not account for or refund any advanced fees.

¶35  The OLR's complaint alleges that, by virtue of her conduct while representing C.P., Attorney Boyle:

- failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3[7] (Count Ten);

- charged an unreasonable fee in violation of SCR 20:1.5(a)[8] (Count Eleven);

---

[7] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[8] SCR 20:1.5(a) provides as follows:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

- failed to hold unearned fees and advanced payments of fees in trust until earned, in violation of SCR 20:1.15(b)(4)[9] (Count Twelve); and
- failed to refund unearned fees, in violation of SCR 20:1.16(d) (Count Thirteen).

¶36 After a hearing on Counts Four through Thirteen, the referee determined that the OLR had proven misconduct in all counts except Count Ten, which, as mentioned above, alleged that Attorney Boyle failed to act with reasonable diligence and promptness during her representation of C.P.[10] See SCR 20:1.3. The referee recommended that Attorney Boyle receive a four-month suspension, as the OLR had requested. In support of this recommendation, the referee noted that, in both this disciplinary matter and Attorney Boyle's earlier 60-day suspension, Attorney Boyle displayed a pattern of failing to communicate appropriately with her clients. The referee also noted that throughout this disciplinary proceeding, Attorney

_____

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[9] SCR 20:1.15(b)(4) state: Unearned fees and cost advances.

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[10] The OLR does not challenge the referee's determination on Count Ten.

Boyle did not express any remorse over her conduct, was quick to blame her own clients for communication problems, and offered the "greatly exaggerated" defense that it was too dangerous for her to engage in meaningful written communications with clients in federal prison. The referee also expressed concern over whether Attorney Boyle appreciated the error in her ways, writing:

> I am not sure this disciplinary case or the prior disciplinary cases have impressed upon [Attorney] Boyle the need to communicate with her clients from the beginning to the end of her representation. I also do not believe she accepts the need to have a clear understanding of what legal services she will perform for criminal clients, both at the beginning of her representation and as the case develops. I sense she remains most reluctant to put anything in writing.

¶37 As to the appropriate monetary sanctions, the referee recommended that Attorney Boyle should be assessed the entire costs of the disciplinary proceeding, which total $22,989.06 as of March 11, 2013. The referee further recommended that Attorney Boyle be ordered to refund the $2,500 retainer in the C.P. matter. In making this restitution recommendation, the referee dismissed as "not credible" Attorney Boyle's insistence that she had earned the $2,500 by reading transcripts in C.P.'s case. The referee found that Attorney Boyle performed no meaningful legal services for C.P. other than checking the state's Consolidated Court Automation Programs (CCAP) system to determine the status of C.P.'s case. As to C.M.'s case, the referee recommended that no restitution is owed, as Attorney Boyle spent significant time on the case, and "[w]hile [C.M.]

14

may not be happy with the result . . . , OLR has not requested and has not proven . . . that any portion of the [$20,000] fee should be returned."

¶38 Attorney Boyle appeals. In conducting our review, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶39 Although Attorney Boyle identifies only a single issue for our review——whether the referee's recommended sanction is appropriate——she devotes considerable time in her briefs to challenging the factual bases for many of the referee's determinations of misconduct. For example, Attorney Boyle argues that the referee undercounted or undervalued the communications she had with C.M., which, she claims, were sufficient to ward off a determination that she failed to appropriately communicate with him. Similarly, Attorney Boyle argues that the referee failed to account for all of the legal work she performed on C.P.'s case, which, she claims, justified the $2,500 she was paid.

¶40 Tellingly, Attorney Boyle's briefs barely mention—— much less apply——the standard of review relevant to a referee's factual findings: the clearly erroneous standard. See Inglimo,

15

305 Wis. 2d 71, ¶5. This omission leads Attorney Boyle to overlook the fact that our review of the referee's factual findings is deferential rather than plenary. Thus, instead of leaving us with a definite and firm conviction that the referee has made a factual mistake, Attorney Boyle leaves us with the impression that she would rather not confront the damning evidence against her.

¶41 The record overwhelmingly shows that in the matters under review, Attorney Boyle failed to carry out her responsibilities to her clients. She habitually neglected her duty to communicate with clients, often leaving her clients entirely in the dark. There is no justifiable reason, for example, for a client to have to discover the outcome of an important motion or an appeal from someone other than his or her lawyer, months after the relevant court issued its decision——as C.M. did, twice. There is no justifiable reason for a client's reasonable requests——for progress updates, for information on fees, for the case file, for news of the very outcome of their case——to be wholly ignored by their lawyer for vast expanses of time.

¶42 Perhaps most troubling is the fact that, throughout this disciplinary hearing, Attorney Boyle has strenuously

avoided taking responsibility for the bulk of the conduct at issue,[11] instead offering a variety of excuses.  They include:

- C.M. wrote and called her too frequently.

- Telephone calls from prisons are not clearly identified on telephone systems.

- She was out of the office or busy when C.M. called.

- Her failure to respond to C.M.'s communications was reasonable given that there was no ongoing activity in his case at that time.

- C.M. could relay messages to her through his family and friends.

- Written communications to a client in the federal prison system are risky because other inmates may steal them.

- Keeping memos or notes of her communications with clients is dangerous for her clients.

- Setting up telephone conferences through the prison system is difficult.

- She is too busy to document all communications with clients.

- She could not send C.M. his file because it was too large to transmit to the prison.

---

[11] We note that Attorney Boyle admits the facts and misconduct alleged by the OLR in Count Eight (failure to promptly respond to C.M.'s request for information concerning fees and expenses, in violation of SCR 20:1.5(b)(3)), and Count Nine (failure to return C.M.'s file upon termination of representation, in violation of SCR 20:1.16(d)).

- The precise nature of services to be rendered in criminal matters is difficult to state in writing at the commencement of representation.

- She was unaware and therefore did not inform C.M. of the district court's denial of relief under 28 U.S.C. § 2255 because of the "unique nature" of the federal court's electronic filing system.

¶43 The referee was not persuaded by these and other excuses. We are similarly unpersuaded. We therefore affirm the referee's findings of fact and agree with the referee that those factual findings demonstrate that Attorney Boyle committed the misconduct alleged in Counts Four through Nine and Eleven through Thirteen.

¶44 With respect to the discipline to be imposed, we depart from the referee's recommendation and from the OLR's suggestion that a four-month suspension is sufficient. We are particularly concerned by the blame-shifting strategy that Attorney Boyle frequently uses to try minimize her ethical missteps. This strategy demonstrates that Attorney Boyle does not fully understand her ethical obligations as a lawyer. The purpose of lawyer discipline is to protect the public, the courts, and the legal profession in Wisconsin from incompetent and unfit attorneys. See In re Disciplinary Proceedings Against Hankel, 126 Wis. 2d 390, 394, 376 N.W.2d 848 (1985). The public, the courts, and the Wisconsin legal profession need protection from Attorney Boyle until she demonstrates to this court, before she resumes practice, that she has made efforts to

remedy the causes of her repeated failures to serve her clients ethically. A six-month suspension is therefore necessary. See SCR 22.28(3). It is also consistent with the range of discipline this court has imposed for similar misconduct. See, e.g., In re Disciplinary Proceedings Against Joset, 2008 WI 41, 309 Wis. 2d 5, 748 N.W.2d 778 (six-month suspension for failing to act with reasonable diligence and promptness in representing clients, failing to keep clients reasonably informed about the status of a matter and promptly comply with reasonable requests for information, failing to comply with court orders, and failing to cooperate with the investigation into misconduct); In re Disciplinary Proceedings Against Glynn, 2000 WI 117, 238 Wis. 2d 860, 618 N.W.2d 740 (nine-month suspension for failing to act with reasonable diligence and promptness in representing clients, failing to explain matters reasonably necessary to permit clients to make informed decisions regarding their representation, and failing to cooperate with the investigation into misconduct).

¶45 We further conclude that full costs are to be imposed on Attorney Boyle. Neither the OLR nor Attorney Boyle disputes the appropriateness of assessing Attorney Boyle with the full costs of this disciplinary proceeding.

¶46 Finally, we conclude that Attorney Boyle must reimburse C.P.'s companion, B.T., for the $2,500 B.T. paid to Attorney Boyle. Attorney Boyle asks this court to send the issue of her entitlement to the $2,500 fee payment to arbitration. However, Attorney Boyle surely knew, or should

19

have known, that professional discipline may include restitution "to the person whose money or property was misappropriated or misapplied in the amount or value of such money or property as found in the disciplinary proceedings." See SCRs 21.16(1m)(em) and (2m)(a)1. Attorney Boyle had ample opportunity to verify the amounts she earned or expended while working on C.P.'s case. She has failed to do so. The referee found Attorney Boyle's justification for the $2,500 fee to be incredible. This is not the forum for reweighing Attorney Boyle's credibility.

¶47 IT IS ORDERED that the license of Bridget E. Boyle to practice law in Wisconsin is suspended for a period of six months, effective January 30, 2014.

¶48 IT IS FURTHER ORDERED that Bridget E. Boyle shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶49 IT IS FURTHER ORDERED that within 60 days of the date of this order, Bridget E. Boyle shall pay restitution in the amount of $2,500 to B.T.

¶50 IT IS FURTHER ORDERED that within 60 days of the date of this order, Bridget E. Boyle shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶51 IT IS FURTHER ORDERED that restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

20

¶52 IT IS FURTHER ORDERED that compliance with all conditions of this decision is required for reinstatement.  <u>See</u> SCR 22.29(4)(c).