# Supreme Court of Wisconsin

| | |
|---|---|
| Case No.: | 2022AP11-D |

| | |
|---|---|
| Complete Title: | In the Matter of Disciplinary Proceedings Against<br>Steven D. Johnson, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant-Respondent,<br>   v.<br>Steven D. Johnson,<br>      Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST JOHNSON

| | |
|---|---|
| Opinion Filed: | November 2, 2023 |
| Submitted on Briefs: | |
| Oral Argument: | |

| | |
|---|---|
| Source of Appeal: | |
|   Court: | |
|   County: | |
|   Judge: | |

| | |
|---|---|
| Justices: | |

Per curiam.

| | |
|---|---|
| Attorneys: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2022AP11-D

STATE OF WISCONSIN               :          IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Steven D. Johnson, Attorney at Law:

Office of Lawyer Regulation,

      Complainant-Respondent,

    v.

Steven D. Johnson,

      Respondent-Appellant.

**FILED**

**NOV 2, 2023**

Samuel A. Christensen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1  PER CURIAM.  This disciplinary matter comes to the court on Attorney Steven D. Johnson's appeal of a report and recommendation of Referee Sue E. Bischel. After holding an evidentiary hearing, the referee concluded that the Office of Lawyer Regulation (OLR) had proven the five misconduct charges asserted in its complaint; namely, one count of engaging in offensive personality, in violation of Supreme Court Rule (SCR)

20:8.4(g)[1] and SCR 40.15;[2] one count of failing to adequately supervise nonlawyer staff members, in violation of SCR 20:5.3(a)[3] and (b);[4] two counts of violating the duty of candor toward a tribunal, in violation of SCR 20:3.3(a)(1);[5] and one count of failing to properly communicate with his client in violation of SCR 20:1.4(b).[6] As a sanction, the referee recommended that the court suspend Attorney Johnson's Wisconsin law license for six months and order him to pay the full costs of this disciplinary

---

[1] SCR 20:8.4(g) provides: "It is professional misconduct for a lawyer to violate the attorney's oath."

[2] SCR 40.15 provides, in pertinent part: "I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged."

[3] SCR 20:5.3(a) provides: "With respect to a nonlawyer employed or retained by or associated with a lawyer a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer."

[4] SCR 20:5.3(b) provides: "With respect to a nonlawyer employed or retained by or associated with a lawyer a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."

[5] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[6] SCR 20:1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

matter, which, as of June 14, 2023, total $33,001.74. Restitution is not at issue.

¶2 Attorney Johnson has appealed the referee's report and recommendation. In his appellate briefing, Attorney Johnson argues that the referee made certain incorrect factual findings; that the OLR failed to meet its burden of proof; and that a six-month suspension of his license to practice law is an excessive sanction.[7]

¶3 After reviewing this matter and considering Attorney Johnson's appeal, we accept the referee's factual findings, and we agree with the referee that Attorney Johnson committed the charged violations. We further agree with the referee that Attorney Johnson's misconduct warrants a six-month license suspension. We impose full costs.

¶4 Attorney Johnson was admitted to practice law in Wisconsin in July 2005 and practices in Appleton, Wisconsin. He has a disciplinary history. In August 2008, he received a private reprimand for being convicted of one count of misdemeanor battery as a domestic abuse incident. Private Reprimand No. 2008-21.[8] In May 2010, he received a public

---

[7] At oral argument, Attorney Johnson modified his argument regarding the factual accuracy of the referee's report. While registering general disagreement with the referee's findings, he argued that even if all of the findings are accepted, they are insufficient to justify the recommended six-month suspension.

[8] Electronic copy available at https://compendium.wicourts.gov/app/54621f3d2a71043b345c4c516a74 3019494e1732.continue?action=detail&detailOffset=13.

reprimand for being convicted of one count of felony child abuse (recklessly causing harm), which related to an incident occurring at Attorney Johnson's home involving his 12-year-old son. Public Reprimand of Steven D. Johnson, No. 2010-4.[9]

¶5 Attorney Johnson has been a solo practitioner at Johnson Law Firm SC in Appleton, Wisconsin during his entire legal career. All of Attorney Johnson's employees are nonlawyers. His areas of practice are criminal defense, family law, personal injury, and bankruptcy. He takes public defender appointments in certain types of cases.

¶6 The behavior in question took place from late 2018 to late 2020. As mentioned above, Attorney Johnson's behavior gave rise to five counts of misconduct.

- **Count One**

¶7 In Count One, the OLR alleged that Attorney Johnson engaged in offensive personality toward his staff in violation of the Attorney's Oath in SCR 40.15, which is enforced via SCR 20:8.4(g). Several members of Attorney Johnson's staff testified at the evidentiary hearing regarding his office conduct. Attorney Johnson also testified regarding his office conduct. After hearing competing testimony on the issue, the referee chose to believe the version of events to which several of his staff members testified. Specifically, the referee found that, starting in late 2018 and continuing to April 2020,

---

[9] Electronic copy available at https://compendium.wicourts.gov/app/280d26380115475582510c652e62 7c1c456d1251.continue?action=detail&detailOffset=1.

4

Attorney Johnson repeatedly used the words "bitches," "stupid bitches," "whores," "idiots," "retard," and "retarded" when addressing staff. The referee further found that Attorney Johnson yelled at staff, sometimes for an extended period of time, and occasionally hit the counter or wall when upset. The referee further found that Attorney Johnson yelled at three of his staff members, "I hope you and all your fucking children die," causing one staff member to quit immediately because she had a young child suffering from cancer. The referee further found that on one occasion, Attorney Johnson uttered a racial slur that was overheard by two employees. Finally, the referee found that at least five of Attorney Johnson's staff members left their employment primarily because of Attorney Johnson's behavior.

¶8 Based on these findings, the referee concluded that Attorney Johnson failed to refrain from all offensive personality in his interactions with his employees from late 2018 through April 2020, and therefore violated the Attorney's Oath in SCR 40.15, which is enforced via SCR 20:8.4(g).

- **Count Two**

¶9 Count Two concerns Attorney Johnson's alleged failure to review documents prepared by his staff prior to those documents being filed with the court, and alleged failure to adequately supervise and train his staff, in violation of SCR 20:5.3(a) and (b). Several members of Attorney Johnson's staff testified at the evidentiary hearing regarding his supervisory and training efforts. Attorney Johnson also testified regarding

5

his supervisory and training efforts. After hearing competing testimony on the issue, the referee chose to believe the version of events to which several of his staff members testified. Specifically, the referee found that in criminal matters, which constituted the majority of Attorney Johnson's work, one or more of Attorney Johnson's nonlawyer staff performed the following duties without Attorney Johnson's participation and with his permission:

- met with clients and completed fee agreements;
- drafted various motions, affixed Attorney Johnson's signature, and filed them with the court;
- reviewed discovery materials and discussed them with clients;
- completed preliminary hearing waiver forms and plea questionnaires with clients, including answering clients' questions about the process, affixing Attorney Johnson's signature, and filing them with the court;
- negotiated plea agreements with prosecutors using Attorney Johnson's email;
- watched discovery videos to identify improper police procedures or possible defenses;
- prepared materials for trial (e.g. opening statements, witness lists, witness questions, cross-examination questions, and voir dire questions);
- automatically prepared and filed a substitution of judge request for one particular judge;

6

- drafted, electronically signed, and filed motions for continuance because Attorney Johnson had a conflict or the court date was not convenient for him; and

- drafted, electronically signed, and filed motions for modification of bond.

The referee noted that it was very uncommon for Attorney Johnson to review the documents his staff prepared in criminal cases before they affixed his signature and e-filed them.

¶10  Regarding Attorney Johnson's personal injury caseload, the referee found that he instructed nonlawyer staff to draft demand letters——which he did not review——and negotiate with insurance companies.

¶11  Describing Attorney Johnson's work habits more generally, the referee found that he knew his staff was engaging in all the above-referenced activities and did not tell them to stop.  He rarely drafted documents himself.  He was in the office a few times a week in 2018-2019——approximately 15% of his work week.  He was reluctant to accept phone calls from clients, told his staff to bring their questions to him, and instructed staff what to say to the client.

¶12  Based on these findings, the referee concluded that Attorney Johnson's conduct violated the rules requiring his supervision of nonlawyer assistants, SCR 20:5.3 (a) and (b).

- **Count Three**

¶13  Count Three concerns Attorney Johnson's lack of candor toward a small claims court commissioner.  The referee found the following facts with regard to this count.  In two small claims

7

cases, Attorney Johnson had sought and received reimbursement from his insurance company for the damages he was seeking in small claims court. Both small claims actions were against Attorney Johnson's former employee, F.W., and her husband; both actions concerned money spent on an expert in a case brought by Attorney Johnson on F.W.'s husband's behalf. F.W. had written a $1,500 check on the law firm account to pay the expert. F.W. claimed that Attorney Johnson had authorized her to write the check; he claimed otherwise. F.W. agreed to reimburse Attorney Johnson for that amount but paid only $200. Attorney Johnson filed a small claims action against F.W. and her husband in November 2019, shortly after F.W. quit working for him. Soon thereafter, Attorney Johnson retained a lawyer to represent him in this small claims matter. Attorney Johnson obtained a default judgment against F.W. and her husband for $1,300 plus costs.

¶14 Attorney Johnson subsequently received an invoice from the expert for an additional $2,877.90. In February 2020, Attorney Johnson, through Attorney C.F., filed a second small claims action against F.W. and her husband for the additional amount invoiced.

¶15 On May 11, 2020, Attorney Johnson filed a claim with his insurance company, claiming that F.W. had stolen from him all the money for the expert. On May 20, 2020, Attorney Johnson's insurer issued a check to him for the entire amount less his deductible. Attorney Johnson did not pay the expert's second invoice until August 4, 2020.

8

¶16 On October 6, 2020, Attorney Johnson's second small claims action went to trial. During direct examination, Attorney Johnson never disclosed that he had been reimbursed by his insurer. F.W. then testified that she thought Attorney Johnson had been reimbursed by his insurer. The court commissioner asked Attorney Johnson if that was true, and he ultimately confirmed it was. The court commissioner asked Attorney Johnson's lawyer, Attorney C.F., if he was aware of the insurance payment, and he stated he had become aware of the payment only within the previous five minutes. The court commissioner dismissed the case. Later, with Attorney Johnson's consent, the court commissioner dismissed the default judgment against F.W. and her husband that had been entered in Attorney Johnson's first small claims case.

¶17 At the disciplinary hearing, Attorney Johnson testified that he had told Attorney C.F. about the insurance payment many times before the small claims trial, and that he had mentioned the insurance payment in a text to Attorney C.F. a few days before trial. Attorney C.F. testified that he could not specifically recall a conversation with Attorney Johnson about the insurance reimbursement prior to the text, and that he did not read Attorney Johnson's entire text before the small claims trial. The referee deemed Attorney C.F.'s testimony more credible than that of Attorney Johnson, and determined that Attorney Johnson knowingly omitted material facts in his testimony at the small claims trial in violation of SCR 20:3.3 (a)(1).

9

- **Counts Four and Five**

¶18 Counts Four and Five both concern Attorney Johnson's representation of D.P. The referee found the following facts regarding these counts. Attorney Johnson represented D.P. in a felony matter in circuit court. One of Attorney Johnson's nonlawyer staff reviewed a waiver of preliminary examination form with D.P. D.P. signed the waiver form on October 9, 2020. Attorney Johnson's electronic signature was affixed to the waiver form, which attested that Attorney Johnson had personally explained and discussed the form with D.P., answered D.P.'s questions, and observed D.P. sign the form. In fact, Attorney Johnson did not do any of those things before D.P. signed the waiver form on October 9, 2020, or before the form was filed later that day, or before the October 12, 2020 waiver hearing before a court commissioner.

¶19 In Count Four, the OLR alleged, and the referee agreed in a summary judgment order, that by failing to discuss the defendant's waiver of preliminary examination form with D.P. prior to having D.P. sign the document, Attorney Johnson failed to explain matters to his client in violation of SCR 20:1.4(b).

¶20 In Count Five, the OLR alleged, and the referee determined in her report, that by filing with the court a waiver of preliminary examination form on which he falsely attested that he had personally explained and discussed the waiver with D.P. and answered his questions, Attorney Johnson made a false statement to the court in violation of SCR 20:3.3(a)(1).

10

¶21 The referee next addressed the issue of sanctions. The referee considered all of Attorney Johnson's violations to be very serious. Regarding Count One, the referee noted that Attorney Johnson's offensive behavior and language was persistent and directed to his entire staff; that his comment about wishing his staff's children would die was "simply unconscionable"; and that the only relief staff could find was to quit. As to Count Two, the referee wrote that she was "particularly struck with the seriousness and extent" of Attorney Johnson's failure to adequately supervise his nonlawyer staff. His violation of this rule was "egregious," the referee wrote, for "[i]n many respects, [Attorney Johnson] was demanding or encouraging all of his nonlawyer staff to essentially engage in the practice of law. The potential consequences of that are particularly alarming in criminal cases." Regarding Counts Three and Five, the referee noted that Attorney Johnson's lack of candor toward the tribunal was particularly concerning given that he made false statements to a tribunal as both an attorney and a witness. Regarding Count Four, the referee characterized Attorney Johnson's failure to explain the waiver of preliminary hearing form to his client as a very serious matter, notwithstanding Attorney Johnson's claim that his client was not harmed and was happy with his representation.

¶22 The referee noted there are a number of aggravating factors that affect the level of recommended discipline. Attorney Johnson's disciplinary history arose out of two previous criminal matters—one concerning a domestic abuse

11

incident, and another involving child abuse. His misbehavior here included a selfish motive, in that he tried to collect money in his small claims cases despite the fact he had been reimbursed already by his insurer. His various forms of misbehavior went on for some time, stretching over a two-year period. His expressions of remorse were questionable. And he was untruthful during his sworn disciplinary hearing testimony.

¶23 The referee found few mitigating factors in play. Attorney Johnson was cooperative during the disciplinary process, though this factor was diminished by what the referee deemed to be his "false" testimony during the disciplinary hearing. His prior reprimands, from 2008 and 2010, are remote in time. Although Attorney Johnson claimed that stress caused by certain personal events——particularly his ex-wife's illness and death in 2019——should be viewed as a mitigating factor, especially with regard to the offensive personality count, the referee was unconvinced, finding that the primary cause of his misbehavior in this regard was frustration over staff error and matters not going as planned in court. The referee noted that Attorney Johnson's claim that stress caused his poor behavior toward staff might be more persuasive if he had admitted to even some of the allegations of poor behavior——which he didn't, choosing instead to deny them all outright.

¶24 Ultimately, the referee determined that Attorney Johnson's conduct merited a six-month suspension, as the OLR had requested.

12

¶25 Attorney Johnson appeals. In conducting our review, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶ 44, 261 Wis.2d 45, 660 N.W.2d 686.

¶26 As to Count One (offensive personality), Attorney Johnson claims that the referee seemed to place the burden of proof on him, requiring him to disprove the testimony of individuals who had mischaracterized his conduct due to their own agendas and hostility toward him. He admits he used swear words in the office and uttered a racial slur when greeting a friend, but he insists that his poor language choices, considered contextually and in light of the stress he was under, should not constitute offensive personality. He specifically denies using the more vulgar language that employees attributed to him. As to his former employees' claim that he stated he wished their children would die, he insists their testimony on this point was inconsistent and should not be believed over his testimony denying making that comment.

¶27 As to Count Two (failure to supervise nonlawyer staff), Attorney Johnson claims he did not violate SCR 20:5.3(a) and (b) because these provisions do not require him to personally perform training, nor do they prohibit him from

13

delegating these functions. The rule only requires that an attorney ensure his or her employees are properly trained. Attorney Johnson insists he made sure his staff was properly trained——by him, by more experienced employees, and by use of a detailed employee handbook. He claims that he "had many different active forms of communication and document review" that he and his staff used daily, and the fact that the system wasn't perfect doesn't render the system nonexistent. After all, Attorney Johnson says, SCR 20:5.3(a) and (b) requires "reasonable efforts," not perfection.

¶28 As for Count Three (lack of candor toward the tribunal), Attorney Johnson takes issue with the referee's factual findings. He insists that in advance of the small claims trial, he told his lawyer, Attorney C.F., about the reimbursement he had received from his insurer, and he left it up to Attorney C.F. to decide what to do with this information. The referee's determination that Attorney C.F. was not aware of the insurance reimbursement until Attorney Johnson admitted to the reimbursement during the disciplinary hearing is incorrect. And in any event, Attorney Johnson argues, to the extent he knowingly omitted a material fact from his representations to the court, any such error was fleeting: he truthfully testified at the small claims trial, after he was asked, that he had received an insurance reimbursement.

¶29 As to Count Four, concerning his failure to discuss with D.P. the waiver of preliminary examination form in violation of SCR 20:1.4(b), Attorney Johnson insists that he did

14

not violate the rule because D.P. did not testify in this disciplinary matter. Thus, it is unknown what D.P. understood, or didn't understand, at the time of the hearing in question, or whether he truly had enough information to make an informed decision regarding the preliminary examination waiver. And there is no evidence that D.P. was harmed or otherwise unhappy with Attorney Johnson's representation.

¶30 Finally, as to Count Five, Attorney Johnson claims that the OLR did not prove by clear, satisfactory, and convincing evidence that he knowingly made a false statement on D.P.'s waiver of preliminary hearing form. Attorney Johnson insists that his paralegal completed the form, and because he did not review it, he was not aware of the incorrect statement it contained. This was sloppy work, he concedes, but not unethical work. Thus, the report's conclusion as to this count should be rejected.

¶31 As to the appropriate length of suspension——the topic to which Attorney Johnson devoted most of his oral argument time——he submits that a suspension short of six months is merited. He suggests a 90-day suspension would be most appropriate. In recommending a longer suspension, Attorney Johnson insists the referee gave insufficient weight to the difficulties that he was experiencing in his personal life at the relevant time, including his ex-wife's sickness and death, the impact these events had on their child, and the stress of the COVID-19 pandemic. He says that lesser discipline has been imposed for what he deems to be far more egregious behavior.

15

See, e.g., In re Disciplinary Proceedings Against Kratz, 2014 WI 31, 353 Wis. 2d 696, 851 N.W.2d 219 (four-month suspension for sending unsolicited, sexually suggestive text messages to a domestic abuse crime victim, as well as for making sexually suggestive statements to two social workers before or during court proceedings); In re Disciplinary Proceedings Against Blask, 216 Wis. 2d 129, 573 N.W.2d 835 (1998) (public reprimand following two physical altercations and the provision of false information to the police regarding one of the altercations). Finally, Attorney Johnson notes that, given the time involved in the reinstatement process, a six-month suspension would effectively stretch into a much longer period, which is "a professional death sentence" for a solo practitioner like himself.

¶32 The OLR disputes Attorney Johnson's claims. The OLR notes, regarding Count One, that all conflicts in the testimony as to the facts necessary to determine whether Attorney Johnson engaged in offensive personality have been resolved by the referee and are supported by the evidence. The referee is the ultimate arbiter of credibility, and the referee determined that the testimony of several of Attorney Johnson's former staff members was more credible than Attorney Johnson's testimony. This credibility determination should not be disturbed. Attorney Johnson's proven, chronic, ill-tempered conduct toward his staff plainly violates the offensive personality rule.

¶33 As to Count Two, the OLR submits that the facts, as found by the referee, speak for themselves. The referee found

16

that Attorney Johnson did very minimal training of his nonlawyer staff regardless of their education and experience. The referee further found that Attorney Johnson permitted his staff to perform a number of legal duties that he should have been performing himself——again, with nearly nonexistent supervision by him. Finally, the OLR notes, the referee did not merely conclude that Attorney Johnson's conduct violated SCR 20:5.3(a) and (b); she concluded that Attorney Johnson's violations of the rule were "rampant." There is no reason to question the referee's determinations regarding this count.

¶34 As to Count Three, the OLR again submits that the facts speak for themselves. Attorney Johnson's primary argument is that Attorney C.F. was well aware of the insurance payment prior to the small claims trial and was responsible for what to do with that information. The referee found otherwise, believing Attorney C.F.'s testimony that he did not fully read Attorney Johnson's text that mentioned the insurance reimbursement, and that he first became aware of the insurance reimbursement during the small claims trial. The referee disbelieved Attorney Johnson's testimony that he told Attorney C.F. many times about the insurance reimbursement. As the ultimate arbiter of credibility, the referee's determinations should not be disturbed.

¶35 Regarding Count Four, the OLR once again submits that the facts speak for themselves. The plain language of SCR 20:1.4(b) states that a lawyer "shall explain a matter" to the client, and the referee specifically found that there was no

17

evidence that Attorney Johnson explained anything at all to D.P. about the waiver of preliminary examination form prior to having D.P. sign the form. Attorney Johnson's failure to produce any evidence that he explained anything to D.P. makes it clear that the OLR was entitled to summary judgment on this count.

¶36 Regarding Count Five, the OLR again relies on the facts found by the referee. The referee found that one of Attorney Johnson's nonlawyer employees reviewed a waiver of preliminary examination form with D.P., who then signed the form. The referee further found that Attorney Johnson's nonlawyer employee electronically signed Attorney Johnson's name on the waiver form and e-filed it, just as staff had done on a regular basis with other documents. The waiver form falsely stated that Attorney Johnson had personally explained and discussed the form with D.P. and had personally observed D.P. sign the form. And, the referee found, Attorney Johnson knew about all of these things. In light of these non-clearly-erroneous factual findings, the OLR says, Attorney Johnson's denials about his intent and knowledge merit little or no weight.

¶37 Regarding the referee's recommended six-month suspension, the OLR says that this suspension length is supported by the evidence and is commensurate with the degree, extent, and nature of Attorney Johnson's misconduct.

¶38 As we view it, the OLR has the better of the two sets of arguments. Most of Attorney Johnson's arguments rely on challenges to the referee's factual determinations. These are

18

long-shot arguments, as this court defers to the referee's determination of historical facts and assessments of witness credibility. See In re Disciplinary Proc. Against Boyle, 2013 WI 103, ¶ 40, 351 Wis. 2d 713, 840 N.W.2d 694; In re Disciplinary Proceedings Against Polich, 2005 WI 36, ¶ 25, 279 Wis. 2d 266, 694 N.W.2d 367. The referee heard two days of testimony, saw the witnesses, gauged their credibility, and wrote a lengthy report discussing her findings in detail. Attorney Johnson offers nothing that would cause this court to second-guess the referee's well-explained factual findings or the legal conclusions that follow from them.

¶39 As for Attorney Johnson's argument that the recommended six-month suspension is excessive, we disagree. Attorney Johnson's first category of misconduct——his pervasive verbal abuse of his staff members, compelling many of them to quit——alone justifies a not-inconsequential suspension. In Kratz, this court imposed a four-month suspension on a prosecutor——who, unlike Attorney Johnson, had no previous disciplinary history——for sending inappropriate text messages to a domestic abuse crime victim, and for making inappropriate verbal statements to two social workers before or during court proceedings. A four-month suspension might be a reasonable suspension length for Attorney Johnson's long course of highly inappropriate verbal behavior toward his staff members if this were the only category of his misconduct.

¶40 But there are several additional categories of misconduct to consider. First, the court must consider Attorney

19

Johnson's "rampant," "egregious," and "appalling" (in the referee's words) violation of his duty to supervise nonlawyer staff, in which he demanded or encouraged his nonlawyer staff to essentially engage in the practice of law without any supervision by him. Second, the court must consider Attorney Johnson's lack of candor with tribunals——both as a lawyer and a litigant. And third, the court must consider Attorney Johnson's failure to explain anything at all to his client about the waiver of his right of preliminary examination.[10] To these categories of misconduct, the court must also add to its consideration the various aggravating factors presented here; i.e., Attorney Johnson's disciplinary history, the referee's determination that he was untruthful during portions of his disciplinary hearing testimony, his questionable ability to acknowledge the wrongful nature of his conduct, the selfish nature of certain of his acts, and the length of time his misconduct spanned.

¶41 Considering all of these factors, the recommended six-month suspension is merited. Although we are not unsympathetic to the personal difficulties Attorney Johnson has faced in recent years, these circumstances cannot serve as carte blanche for him to disregard his professional obligations in the manner proven here. His misconduct is blatant; his two prior reprimands clearly failed to have their intended effect. We

---

[10] Given this constellation of misconduct, it is not surprising there is no precedent that is precisely on all fours with this case.

agree with the referee that a more severe sanction is warranted this time around. And the fact that a six-month suspension will require him to go through a formal reinstatement proceeding is a plus, not a minus. See SCR 22.28(3). For the benefit of the public and the bar, it is important that Attorney Johnson be fully vetted before being allowed to practice law again.

¶42 We turn now to the issue of costs. They are considerable ($33,001.74 as of June 14, 2023), but Attorney Johnson does not dispute them, and we see no reason on this record to shift them away from Attorney Johnson and towards other members of the bar. We impose them in full. See SCR 22.24(1m).

¶43 Finally, we note that the OLR does not seek restitution. None is ordered.

¶44 IT IS ORDERED that the license of Steven D. Johnson is suspended for a period of six months, beginning December 7, 2023.

¶45 IT IS FURTHER ORDERED that, within 60 days of the date of this order, Steven D. Johnson must pay to the Office of Lawyer Regulation the amount of this proceeding totaling $33,001.74.

¶46 IT IS FURTHER ORDERED that Steven D. Johnson shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been suspended.

¶47 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement.  <u>See</u> SCR 22.29(4)(c).