**2025 WI 45**

# Supreme Court of Wisconsin



IN THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
STEVEN D. JOHNSON, ATTORNEY AT LAW

OFFICE OF LAWYER REGULATION,
*Complainant-Respondent,*

*v.*

STEVEN D. JOHNSON,
*Respondent-Appellant.*

No. 2022AP11-D

Decided October 10, 2025

ATTORNEY REINSTATEMENT PROCEEDING

¶1    PER CURIAM.   We review a report and supplemental report filed by Referee L. Michael Tobin, both of which recommend that the court grant Steven D. Johnson's petition to reinstate his license to practice law in Wisconsin following the six-month suspension we imposed in *In re Disciplinary Proceedings Against Johnson*, 2023 WI 73, 409 Wis. 2d 220, 996 N.W.2d 517 (hereafter, "*Johnson*"). We ordered Referee Tobin to prepare a supplemental report after the court learned, on its own, that Attorney Johnson negotiated and received a consensual public reprimand while this reinstatement matter was pending before Referee Tobin and failed to disclose this fact to Referee Tobin, as did the Office of Lawyer Regulation (OLR). No appeal has been filed from Referee Tobin's report or supplemental report, so our review proceeds pursuant to Supreme Court Rule (SCR) 22.33(3). For the reasons stated below, we agree with Referee Tobin that Attorney Johnson should be reinstated, but we caution future

litigants in reinstatement matters not to follow the course charted by the parties here.

¶2      Attorney Johnson was licensed to practice law in Wisconsin in July 2005 and has practiced in Appleton during his entire legal career. He has a disciplinary history. In August 2008, he received a private reprimand for engaging in acts leading to a conviction of one count of misdemeanor battery as a domestic abuse incident. Private Reprimand No. 2008-21. In May 2010, he received a public reprimand for engaging in acts leading to a conviction of one count of felony child abuse (recklessly causing harm), which related to an incident occurring at Attorney Johnson's home involving his 12-year-old son. Public Reprimand of Steven D. Johnson, No. 2010-4.

¶3      On November 2, 2023, this court suspended Attorney Johnson's license to practice law for six months for professional misconduct consisting of one count of engaging in offensive personality, in violation of Supreme Court Rule (SCR) 20:8.4(g) and SCR 40.15; one count of failing to adequately supervise nonlawyer staff members, in violation of SCR 20:5.3(a) and (b); two counts of violating the duty of candor toward a tribunal, in violation of SCR 20:3.3(a)(1); and one count of failing to properly communicate with his client, in violation of SCR 20:1.4(b). *See Johnson*, 409 Wis. 2d 220, ¶1. The misconduct in question took place from late 2018 to late 2020. *Id.*, ¶6. The litigation over this misconduct consumed the better part of two years—the OLR filed its disciplinary complaint in January 2022; the parties litigated the case before a referee for about a year; Attorney Johnson appealed the referee's report and recommendation in January 2023; and, after briefing and oral argument, this court issued a decision agreeing with the referee's report and recommendation on November 2, 2023. There, after noting Attorney Johnson's disciplinary history and the "blatant" nature of his misconduct, we stated that "the fact that a six-month suspension will require him to go through a formal reinstatement proceeding is a plus, not a minus. *See* SCR 22.28(3). For the benefit of the public and the bar, it is important that Attorney Johnson be fully vetted before being allowed to practice law again." *Id.*, ¶41.

¶4      About four months after we issued the *Johnson* decision, on March 11, 2024, Attorney Johnson filed a reinstatement petition. On May 24, 2024, the OLR filed a response stating that it did not oppose Attorney Johnson's reinstatement petition. *See* SCR 22.30(4). On May 30, 2024, the

OLR filed a stipulation for reinstatement and a memorandum in support of that stipulation. *See* 22.30(5)(a).

¶5 Pursuant to SCR 22.30(5)(b), Attorney Johnson's reinstatement petition and the stipulation for reinstatement were submitted for the court's consideration without the appointment of a referee. By order of August 2, 2024, the court rejected the stipulation and referred the petition to Referee Tobin for a hearing. *See* SCR 22.30(5)(b).

¶6 On October 18, 2024, Referee Tobin held an evidentiary hearing on Attorney Johnson's reinstatement petition. The parties submitted pre- and post-hearing briefs in early October and mid-November 2024, respectively. At the evidentiary hearing and in its briefing to Referee Tobin, the OLR did not oppose Attorney Johnson's reinstatement.

¶7 On November 21, 2024, Referee Tobin filed a report recommending that the court grant Attorney Johnson's reinstatement petition. This report came before the court for its review pursuant to SCR 22.33(3).

¶8 In the process of this review, the court discovered that Attorney Johnson had recently resolved a separate disciplinary matter without the court's involvement. This disciplinary matter arose out of two grievances filed against Attorney Johnson, one in October 2022 and the other in March 2023. By early September 2024, Attorney Johnson and the OLR agreed to the imposition of a consensual public reprimand for the misconduct that gave rise to these grievances. *See generally* SCR 22.09. In October 2024, at the OLR's request, the Chief Justice appointed a referee, Reserve Judge Edward Leineweber, who approved the parties' agreement and issued the public reprimand on November 4, 2024. *See* SCR 22.09(2), (3); *see also* Public Reprimand of Steven D. Johnson, No. 2024-09.

¶9 The consensual public reprimand involved Attorney Johnson's work in two client matters in 2021. The first client matter involved Attorney Johnson's representation of a client in a divorce matter from September 2021 until December 2021. Throughout the representation, Attorney Johnson's paralegal handled all communication with the client and performed all the work in the client's case. Attorney Johnson charged the client his attorney rate of $425 per hour for all the work done by the paralegal. The monthly bills sent to the client did not specify the person performing the tasks. Over a three-month period, the bills totaled

approximately $13,000. After the client terminated Attorney Johnson's representation and hired new counsel, the client's successor counsel challenged the amount and manner of Attorney Johnson's billing. Attorney Johnson acknowledged that his paralegal had conducted all office meetings and phone calls with the client, but asserted his charging of the paralegal's time at the attorney rate of $425 per hour was justified because the paralegal "had real time access to me at all times through our office chat." The client had no recollection of any contact with Attorney Johnson in writing, over the phone, or in person at any time during the representation; instead his entire contact with the firm was via Attorney Johnson's paralegal. In the consensual public reprimand approved by Referee Leineweber, the OLR and Attorney Johnson agreed that by charging the client an hourly attorney rate of $425 per hour for work performed by nonlawyer staff, resulting in fees over $13,000 for three months of a standard divorce representation that terminated before the divorce was concluded, Attorney Johnson charged an unreasonable fee in violation of SCR 20:1.5(a). *See* Public Reprimand of Steven D. Johnson, No. 2024-09.

¶10    The second client matter involved in Attorney Johnson's November 2024 consensual public reprimand involved his representation of a criminal client in 2021. Throughout the representation, Attorney Johnson's nonlawyer staff performed much of the legal work outside of court appearances, including plea negotiations and analysis of the evidence, and handled nearly all communication with the client. After several conversations mostly with Attorney Johnson's nonlawyer staff, the client agreed to accept a plea offer. Prior to the plea hearing, Attorney Johnson's staff reviewed written plea questionnaires with the client. The questionnaire filed with the circuit court contained errors in the description of the elements of one of the offenses to which the client agreed to plead guilty. The firm's records did not show that Attorney Johnson personally reviewed the questionnaire with the client. After sentencing, the client's appellate counsel filed a motion to withdraw the plea based on ineffective assistance of counsel. Appellate counsel informed Attorney Johnson of the motion and of his opportunity to testify at an evidentiary hearing. Attorney Johnson, without his client's or the court's permission, filed a document opposing the motion that revealed information relating to his representation of the client, including the discussions his firm had with the client, and argued that the court should deny the client's motion. Ultimately, at the hearing on the client's motion, the State stipulated to the client's withdrawal of the plea because of the inaccurate information the client had been provided. In the consensual public reprimand approved by

Referee Leineweber, the OLR and Attorney Johnson agreed that Attorney Johnson had failed to explain the elements of the crimes to which the client was pleading guilty in violation of SCR 20:1.1 and SCR 20:1.4(b); revealed information relating to the representation of a former client without the client's informed consent in violation of SCR 20:1.6(a) and SCR 20:1.9(c)(2); and used information related to the representation of the former client to the disadvantage of the client in violation of SCR 20:1.9(c)(1). *See* Public Reprimand of Steven D. Johnson, No. 2024-09.

¶11 Problematically, neither Attorney Johnson nor the OLR disclosed any information regarding the consensual public reprimand to Referee Tobin in this reinstatement matter. The parties had a clear and easy opportunity to do so when they filed their post-hearing briefs with Referee Tobin two weeks *after* the reprimand issued. But they simply chose to withhold this information. They likewise failed to disclose any information regarding the reprimand to this court; the court discovered it on its own during a review of Attorney Johnson's disciplinary status.

¶12 There is no valid reason for this omission. The criteria for reinstatement are set forth in SCR 22.305, which states that the petitioner must show by clear, satisfactory, and convincing evidence that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that he or she has complied with SCR 22.26[1] and the terms of the suspension. In addition to these requirements,

---

[1] SCR 22.26, "Activities following suspension or revocation," states, in pertinent part:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:
(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.
(b) Advise the clients to seek legal advice of their choice elsewhere.
(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a

matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

6

SCR 22.29(4)[2] states related requirements that the petition for reinstatement "shall show." All of these additional requirements are effectively incorporated into SCR 22.305.

---

[2] SCR 22.29(4) states:

(4) The petition for reinstatement shall show all of the following:
- (a) The petitioner desires to have the petitioner's license reinstated.
- (b) The petitioner has not practiced law during the period of suspension or revocation.
- (c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.
- (d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.
- (e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.
- (f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.
- (g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.
- (h) The petitioner has fully complied with the requirements set forth in SCR 22.26.
- (j) The petitioner's proposed use of the license if reinstated.
- (k) A full description of all of the petitioner's business activities during the period of suspension or revocation.
- (m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

¶13    Read as a whole, these criteria "require us to undertake a comprehensive assessment of the lawyer." *In re Disciplinary Proceedings Against Mandelman*, 2018 WI 56, ¶25, 381 Wis. 2d 628, 912 N.W.2d 395. Accordingly,

> the referee conducting a hearing on the petition for reinstatement must engage in a full and unrestricted evaluation of the petitioner's past, present, and predicted future behavior, as well as any other relevant information going to the issue of whether the petitioner has the moral character to practice law in this state and whether his or her resumption of the practice of law would be detrimental to the administration of justice or subversive to the public interest.

*In re Disciplinary Proceedings Against Penn*, 2002 WI 5, ¶8, 249 Wis. 2d 667, 638 N.W.2d 287. We noted, too, in *Penn*, that given the comprehensive evaluation that a petitioner for reinstatement must undergo, "the reinstatement hearing if necessary can be far-ranging and not limited to addressing the listed petition requirements in SCR 22.29(4)." *Id.*

¶14    Given the necessary breadth of this reinstatement proceeding, there was no reason for Attorney Johnson and the OLR to have viewed his consensual public reprimand matter and this reinstatement proceeding as mutually exclusive proceedings. The fact that Attorney Johnson recently agreed that he committed serious misconduct in 2021, separate and apart from the 2018-20 misconduct that we considered in imposing his six-month suspension, is unquestionably "past . . . behavior" that is relevant "to the issue of whether [he] has the moral character to practice law in this state and whether his . . . resumption of the practice of law would be detrimental to the administration of justice or subversive to the public interest." *Id.* Referee Tobin should have had knowledge of the reprimand and the underlying conduct when preparing his original report.

¶15    In May 2025, after independently learning of Attorney Johnson's recent consensual public reprimand, we remanded this matter to Referee Tobin for preparation of a supplemental report that takes the reprimand into account. In these remand proceedings, and in their recent filings with this court, the parties provided three explanations for their failure to disclose information regarding the reprimand to Referee Tobin. None is convincing.

¶16     The first explanation, from Attorney Johnson, is that the reinstatement criteria in our rules and the reinstatement questionnaire that the OLR requires petitioners to complete (*see* SCR 22.29(4x)) all focus on the petitioner's conduct *following* suspension; thus, Attorney Johnson suggests, he had no obligation to disclose information regarding his consensual public reprimand, which addressed conduct that *preceded* his suspension.

¶17     This analysis is incomplete to the point of being incorrect. As for the reinstatement criteria, yes, many do focus on the petitioner's conduct following suspension. *See, e.g.,* SCR 22.29(4)(b), (c), (d), (e), (h), (k), and (m). But others are more expansive. For example, an examination of a petitioner's "moral character" and capability to practice law in aid of the "administration of justice" and the "public interest" will commonly involve a consideration of the petitioner's conduct both before and after suspension. *See* SCR 22.305(1), (2). We have said just that. *See Penn*, 249 Wis. 2d 667, ¶8 (quoted above). As for the OLR's reinstatement questionnaire, its content does not supplant the reinstatement criteria stated in our rules. Moreover, while many of its questions focus on the petitioner's conduct following suspension, the final question asks the petitioner to "[p]rovide any other information you believe to be pertinent to the consideration of your petition." The existence of two grievances that ultimately culminated in a consensual public reprimand would certainly seem to be information "pertinent" to the consideration of a reinstatement petition, *see id.*, notwithstanding Attorney Johnson's apparent belief otherwise.[3]

¶18     The second explanation, also from Attorney Johnson, is that at the time of the October 18, 2024 reinstatement hearing before Referee Tobin, the consensual public reprimand had not yet issued; again, the reprimand issued on November 4, 2024. While true, this point ignores the fact that the reprimand issued well before the parties completed their briefing to Referee Tobin in mid-November 2024, and well before Referee Tobin filed his original report on November 21, 2024.

---

[3] At the October 18, 2024 reinstatement hearing before Referee Tobin, the parties introduced as an exhibit a copy of Attorney Johnson's March 7, 2024 reinstatement petition. In it, he did not disclose the pending grievances that later culminated in his consensual public reprimand.

¶19     The third explanation, provided by the OLR, is that it believed SCR 22.40 ("Confidentiality") prevented it from disclosing the conduct underlying the consensual public reprimand to Referee Tobin. *See* SCR 22.40(1) ("Except as otherwise provided in this chapter, all papers, files, transcripts, and communications relating to an allegation of attorney misconduct . . . are to be held in confidence by the director and staff of the office of lawyer regulation . . . .") But any confidentiality concerns that the OLR harbored would have dissipated when the consensual *public* reprimand issued on November 4, 2024—which, again, occurred well before Referee Tobin filed his original report on November 21, 2024. Moreover, SCR 22.40(2) has a provision that would have allowed parties to avoid any uncertainty regarding confidentiality: in addition to specifying certain individuals and agencies to whom the OLR director may disclose confidential information, the rule states that "[t]he supreme court may authorize the release of confidential information to other persons or agencies." Under this provision, the parties—separately or jointly—could have sought this court's authorization to inform Referee Tobin about any aspect of their negotiations for a consensual public reprimand. They did not.

¶20     Nevertheless, the court now has the benefit of Referee Tobin's supplemental report, which, again, he authored with the benefit of knowledge of Attorney Johnson's recent consensual public reprimand. Referee Tobin recommends that the court reinstate Attorney Johnson, as he did in his original report. We agree with this assessment, although not without some hesitation.

¶21     Referee Tobin found, and we agree, that Attorney Johnson satisfied the reinstatement criteria that focus on what Attorney Johnson has done following his suspension. Referee Tobin found that Attorney Johnson had proven by clear and convincing evidence that he sincerely desires to have his license reinstated, SCR 22.29(4)(a); that he has not practiced law during the periods of his suspension and revocation, SCR 22.29(4)(b); that he has complied with the terms of the suspension and revocation orders except for the payment of costs ordered as part of his suspension, which he has made a good faith effort toward paying in light of his financial circumstances, SCR 22.29(4)(c); that he has maintained competence and learning in the law, SCR 22.29(4)(d); that his conduct since being suspended has been exemplary and above reproach, SCR 22.29(4)(e); and that he has complied with the SCR 22.26(1)(e) affidavit requirement, SCR 22.29(4)(h). In addition, the referee found, and we agree, that Attorney Johnson

outlined his activities during his suspension and revocation as required by SCR 22.29(4)(k), and disclosed the proposed use of his license if reinstated (the resumption of his criminal defense, personal injury, and family law practice) as required by SCR 22.29(4)(j). The referee found, further, that our decision in *Johnson* did not require Attorney Johnson to pay restitution, so he owes none. *See* SCR 22.29(4)(m). We accept the referee's findings and conclusions on these requirements for reinstatement.

¶22     A much more difficult question, however, is whether Attorney Johnson has the moral character to practice law in this state, SCR 22.305(1); whether the resumption of his practice would be detrimental to the administration of justice or subversive of the public interest, SCR 22.305(2); whether he has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with them, SCR 22.29(4)(f); and whether he can be safely recommended as a person fit to represent clients and to aid in the administration of justice in this state, SCR 22.29(4)(g).

¶23     Viewed as a whole, these factors require us to consider Attorney Johnson's record of impaired professional fitness and determine whether he has proven, clearly, satisfactorily, and convincingly, that he has overcome the deficiencies that resulted in his earlier misconduct and now has the moral character, ethical soundness, and legal competence to be trusted again with the privilege of practicing law. Here, we note that the "blatant" misconduct for which Attorney Johnson was suspended (*see Johnson*, 409 Wis. 2d 220, ¶41) creates a heavy burden for him to overcome. The misconduct underlying his recent consensual public reprimand adds to this burden. As noted above, Attorney Johnson billed his paralegal's time at his attorney rate—a type of billing mischief that has, in the past, led to a suspension. *See In re Disciplinary Proceedings Against Compton*, 2008 WI 3, 306 Wis.2d 280, 744 N.W.2d 78 (imposing 60-day suspension on lawyer who billed paralegal's time as his own time). Attorney Johnson also provided an inaccurate plea questionnaire to his client through nonlawyer staff, and then breached client confidences when he unilaterally wrote the court to respond to the client's ensuing ineffective assistance claim. *Cf. In re Disciplinary Proceedings Against Thompson*, 2014 WI 25, ¶33, 353 Wis. 2d 556, 847 N.W.2d 793 (noting the "critical" importance of receiving permission from the court before disclosing confidential information as part of a response to a claim of ineffective assistance of counsel). Like the misconduct underlying his suspension, these ethical violations were blatant, not borderline.

¶24    Attorney Johnson nevertheless maintains, and Referee Tobin agreed, that that was then, this is now, and things have changed. Attorney Johnson's failure to disclose information about his consensual public reprimand in these reinstatement proceedings gives us reason to question this sentiment. A lawyer with a history of lack of candor with the courts who seeks reinstatement to the bar should be highly vigilant about disclosing relevant information during the reinstatement proceeding. As discussed above, Attorney Johnson was not. As also discussed above, however, this was a *shared* failure by the parties; both sides viewed the consensual public reprimand matter and this reinstatement matter as proceeding in isolation, each on its own track. Because this was a mutual mistake, we decline to weigh this consideration heavily in our analysis.

¶25    We are reassured by certain of Referee Tobin's findings in his original and supplemental reports, none of which the parties contest. Referee Tobin found that much of Attorney Johnson's recent misconduct stems from his unfortunate tendency to blur the distinction between attorney work and paralegal work. Referee Tobin found that Attorney Johnson has taken steps to address this deficiency, such as updating his office training manuals, developing a process for his personal review of court documents, and committing to consulting with ethics counsel regarding the reasonableness of charged fees. Referee Tobin further noted that Attorney Johnson has been and remains in counseling to assist him in responding to stressful and adverse situations, and that he has demonstrated insight into, and remorse for, his misconduct. Referee Tobin summed up his supplemental report as follows:  "Although the scope of Johnson's pre-suspension misconduct was wider than the misconduct originally considered, Johnson has demonstrated a present understanding of (and respect for) professional standards."

¶26    In light of these uncontested findings, we are satisfied that Attorney Johnson has sufficiently overcome the unethical tendencies he possessed at the time of his recent misconduct and has regained the moral character and professional fitness required to be allowed to return to practice. The importance of conscientiousness, candor, and civility has surely been a long and difficult lesson for Attorney Johnson to learn. We are satisfied that he has done so—and if not, our progressive discipline system will await.

¶27    We note that, according to Referee Tobin's original report, Attorney Johnson still owes the vast majority—approximately $30,000—of

the roughly $33,000 in costs that this court ordered him to pay in *Johnson*, 409 Wis. 2d 220, ¶45. In order to ensure that Attorney Johnson remains in compliance with the terms of this previous disciplinary proceeding and with the requirements of SCR 22.26, we deem it appropriate to condition his reinstatement on his timely entry into a written agreement with the OLR to repay the costs imposed in *Johnson*, commensurate with his ability to pay.

¶28 We note, too, that it is our general practice to assess the full costs of reinstatement proceedings against the petitioning attorney. *See* SCR 22.24(1m). The OLR's statement of costs states that the costs of this proceeding as of September 11, 2025, were $6,393.05. Attorney Johnson has not filed an objection to the OLR's statement of costs, and we find no basis to depart from our general policy in this matter. Accordingly, we impose the full costs of the reinstatement proceeding on Attorney Johnson. We also deem it appropriate to condition his reinstatement on his timely entry into a written agreement with the OLR to repay the costs related to this reinstatement proceeding, commensurate with his ability to pay.

¶29 IT IS ORDERED that the license of Steven D. Johnson to practice law in Wisconsin is reinstated, effective the date of this order. As a condition of reinstatement, Attorney Johnson shall, within 30 days of the date of his reinstatement, enter into a written agreement with the OLR to repay costs related to his prior Wisconsin disciplinary proceedings together with any costs imposed related to this proceeding, commensurate with his ability to pay. This agreement shall require that Attorney Johnson provide the OLR with financial information upon request to facilitate review of his ability to repay these costs. If Attorney Johnson fails to make any required payment to the OLR, the OLR is directed to promptly inform this court of that fact and to request further appropriate action from this court.